**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THADDEUS HATCHETT,

                Petitioner,              Case Number: 2:10-CV-10239

v.                                  HONORABLE STEPHEN J. MURPHY, III

LLOYD RAPELJE,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF**
**HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Thaddeus Hatchett's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Hatchett, presently incarcerated at the Carson City Correctional Facility in Carson City, Michigan, challenges his convictions for carjacking, armed robbery, assault with intent to rob while armed, and felony-firearm on the grounds that the prosecutor engaged in misconduct, he received ineffective assistance of counsel, and identification testimony was improperly admitted. The Court denies habeas relief.

**I. FACTS**

Hatchett's convictions arise from a carjacking and robberies that occurred in Detroit. Deborah Oakley testified that on August 29, 2007, at about 11:00 p.m., she was in her vehicle, a burgundy Ford Taurus, outside her boyfriend's house. Her boyfriend, Benjamin Jennings, stood outside her vehicle. Another vehicle drove by and stopped in front of her vehicle. Someone exited the other vehicle, approached her car, and ordered her to give him the keys "and stuff" and get out of the car. She dropped the keys and got out of the car. She got a quick glance at the man, who, she testified, was holding a gun. At trial, she

identified Hatchett as that man.  Approximately one week later, Oakley attended a live lineup comprised of six men.  She identified Hatchett as the perpetrator.  She also viewed a photo-lineup from which she identified Calvin Craig as the man with the gun.  She testified that she was more confident in her identification of Calvin Craig than of Hatchett.

Jennings, Oakley's boyfriend, testified that he saw a man jump out of the car that stopped near Oakley's car.  The man pulled a gun and told them to give up the car. Jennings viewed a lineup and identified someone other than Hatchett as the perpetrator. Jennings testified that, before making the identification at the lineup, he narrowed the choices to Hatchett and the man he ultimately selected.  He had difficulty choosing between the two because they looked like brothers.

Rochelle Tate testified that, at approximately 1:00 a.m. on August 30, 2007, she was walking home from the bus stop when a burgundy Taurus pulled up alongside her.  Three men were in the car.  The man seated in the front passenger seat opened the door, brandished a gun, and ordered Tate to give him her purse.  She did so.  Tate testified that she later attended a photo lineup and identified Calvin Craig as the man with the gun.

At approximately 5:00 p.m., Hatchett was arrested after a traffic stop of a vehicle driven by Calvin Craig in which he was a passenger.  The vehicle had been reported stolen and a 9 mm handgun was found in the glove compartment.

Troy Debets, a police officer for the City of Detroit, testified that he interrogated Hatchett on September 1, 2007, following Hatchett's arrest.  After being advised of his rights, Hatchett gave a statement in which he admitted he was involved in the carjacking of a burgundy Ford Taurus on August 29, 2007.  He stated that Calvin Craig and Parnel Smith also were involved.  Hatchett stated that he held a gun to the head of a black male

2

who was standing outside the Taurus and then pointed the gun at the female driver and ordered her to turn over her keys, which she did.  He then drove the car away.  Hatchett stated that he found a purse containing thirty dollars in the car.  He and Craig split that money.  Later that night, Hatchett was driving the Taurus, Craig was in the passenger seat, and Smith was in the back seat, when they saw a woman walking down the street.  Hatchett parked the car down the street from the woman and turned off his headlights.  When the woman passed the car, Craig opened the door, pointed the gun at her, and demanded her purse.  The woman handed over her purse and the men drove away.

Roland Brown, a police officer for the City of Detroit, testified that he was the officer in charge of investigating the carjacking and robbery.  He testified that Hatchett was arrested on August 30, 2007.  Following Hatchett's arrest, Officer Brown looked through the personal property taken from Hatchett at the time of his arrest.  He found a set of keys.  The keys were identified by Oakley as the keys to her Ford Taurus.  Officer Brown tested them in Oakley's car's ignition and the vehicle started.

## II.  PROCEDURAL HISTORY

Hatchett was tried before a jury in Wayne Count Circuit Court.  He was convicted of carjacking, armed robbery, assault with intent to rob while armed, and felony firearm.  He was sentenced to 7 to 25 years in prison for the carjacking, robbery, and assault convictions, to be served concurrently, and an additional two-year term for the felony-firearm conviction.

He filed an appeal of right in the Michigan Court of Appeals raising these claims:

I.     Mr. Hatchett was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through the prosecutor's repeated expressions of personal opinions and name-calling, where the prosecutor referred to Mr

3

Hatchett as a "thug," and by a civic-duty argument for conviction.

II.    Mr. Hatchett was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to object to the prosecutor's improper comments.

III.   The trial court erroneously refused to suppress Mr. Oakley's in-court identification and thereby denied Mr. Hatchett of due process of law and a fair trial.

The Michigan Court of Appeals affirmed the convictions. *People v. Hatchett*, No. 284646 (Mich. Ct. App. May 14, 2009).

Hatchett filed an application for leave to appeal in the Michigan Supreme Court. The application raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hatchett*, 485 Mich. 898 (Mich. 2009).

Hatchett then filed the pending petition. He raised the same claims raised on state court direct appeal.

### III.  PETITIONER'S MOTION FOR DEFAULT

Hatchett filed a "Motion Seeking Substantive Relief for Imputed Default for Respondent's Failure to Abide By a Collective Fixed Time to Respond to Petitioner Petition." The basis for Hatchett's motion is his allegation that the respondent failed to timely file an answer to the habeas corpus petition. Rapelje was ordered to file a responsive pleading by September 30, 2010. On that date, Rapelje filed an answer to the petition. Therefore, Rapelje was in compliance with the Court's Order and the Court will deny the request for a default judgment.

Moreover, to the extent that Rapelje served a copy of his answer on Hatchett one day late, a default judgment may not be granted. Even in cases where a respondent fails

4

to file a timely response or a timely motion for extension of time, a federal court may not grant habeas corpus relief by entering a default judgment. *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); *accord Bleitner v. Welborn*, 15 F.3d 652 (7th Cir. 1994); *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987). The motion is denied.

## IV. PETITIONER'S HABEAS CLAIMS

### A.   Prosecutorial Misconduct Claim

Hatchett argues that the prosecutor committed misconduct when, in his opening and closing statements, he several times referred to Hatchett as a "thug," and, in his closing statement, appealed to the jury to return a guilty verdict because Hatchett "no longer needs to be on the streets of Detroit." Respondent argues that this claim is procedurally defaulted because counsel failed to object to the prosecutor's remarks. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claim.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination as to whether the trial was fundamentally unfair is

5

"made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)). The Court must first consider whether the prosecutor's conduct and remarks were improper, and, if so, consider the following four factors to determine "whether the impropriety was flagrant" and thus warrants habeas relief:

> (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007) (internal quotations omitted).

The Michigan Court of Appeals, although holding the claim defaulted, addressed the merits under a plain-error standard of review. A federal constitutional claim reviewed by a state court for "plain error" is an adjudication on the merits for the purpose of receiving deference under AEDPA. *Fleming v. Metrish*, 556 F.3d 520, 432 (6th Cir. 2009); s*ee also Muniz v. Smith*, 647 F.3d 619, 623 n.1 (6th Cir. 2011) (AEDPA deference applies to Michigan Court of Appeals' plain error review of procedurally defaulted claim).

The Michigan Court of Appeals held that the prosecutor's reference to Hatchett as a "thug" was not improper. The court reasoned that because the evidence presented showed that Hatchett confronted a couple at gunpoint and stole the woman's car, calling Hatchett a "thug" was "a fair comment on the evidence and was not so intemperate or prejudicial as to deny defendant a fair trial." *Hatchett*, slip op. at 2. "[T]he use of . . . colorful pejoratives is not improper," so long as the pejorative used is supported by the

6

evidence. *United States v. Fields*, 483 F.3d 313, 360-61 (5th Cir. 2007) (*quoting United States v. Shoff*, 151 F.3d 889, 893 (8th Cir. 1998); a*ccord U.S. v. Temple*, No. 93-6206, 1994 WL 201876, *6 (6th Cir. May 20, 1994) (holding that prosecutor's pejorative description of defendant, by itself, did not constitute prosecutorial misconduct); *Gonzalez v. Carey*, 58 F. App'x 269, 270 (9th Cir. 2003) (holding the prosecutor's references to the petitioner as a "thug" during closing arguments was a reasonable inference based on the evidence presented at trial regarding the petitioner's alleged conduct in abducting, beating, and stabbing the victim); *U.S. v. Wheeler*, 137 F. App'x 304 310 (11th Cir. 2005) ("[U]nflattering characterizations of a defendant . . . do not require reversal if they are supported by the evidence") (internal quotation omitted); *James v. Bowersox*, 187 F.3d 866, 870 (8th Cir. 1999) (denying habeas relief on a prosecutorial misconduct claim where prosecutor's opening argument referred to petitioner as "a big time, drug dealing, murdering, robbing slime").

To warrant federal habeas relief, prosecutorial misconduct must be shown to be so egregious as to render the entire proceedings against the defendant fundamentally unfair. *See e.g., Donnelly v. DeChristoforo*, 416 U.S. at 642-48. The prosecutor's reference to Hatchett as a thug was undoubtably pejorative, but the characterization was a reasonable inference based upon the evidence presented at trial. It did not render the trial unfair.

Hatchett also alleges that the prosecutor committed misconduct by appealing to the jurors to do their civic duty in his closing argument. Specifically, the prosecutor stated: "Based upon the totality of the circumstances . . . the People are asking for a verdict of guilty because this is a young thug, who no longer needs to be on the streets of Detroit." The Michigan Court of Appeals held that the prosecutor's statement was not improper

7

because it was based upon the evidence presented rather on any improper purpose such as the need for safe streets in general.  *Hatchett*, slip op. at 2.

"'Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible.'" *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991)).  A prosecutor does not overstep by appealing to the jurors' sense of justice.  *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009).  The prosecutor's language was not inflammatory nor does it appear intended to incite passions or prejudices.  Further, the trial court instructed the jury to base their decision only on the evidence and the law, not on their sympathies or prejudices.  *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated prosecutor's civic duty argument).  The Court finds that the Michigan Court of Appeals' decision that the prosecutor's argument was not improper was neither contrary to or an unreasonable application of clearly established federal law.

B.    Ineffective Assistance of Counsel Claim

In his second claim, Petitioner argues that his trial attorney was ineffective in failing to object to the prosecutor's misconduct.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  Second,

8

a petitioner must show that counsel's deficient performance prejudiced petitioner.   To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   A court's review of counsel's performance must be "highly deferential."   *Id.* at 689.

The Michigan Court of Appeals denied Hatchett's ineffective assistance of counsel claim because the prosecutor's conduct was not improper and counsel is not required to raise meritless objections.   *Hatchett*, slip op. at 2.   As discussed above, Hatchett has not shown that the prosecutor engaged in misconduct.   Therefore, he cannot show that his attorney was ineffective in not objecting to proper conduct.

C.   <u>Identification Testimony</u>

Finally, Hatchett argues that the victim's identification testimony should have been suppressed because the pretrial lineup was unduly suggestive where the participants were not similar enough in appearance to him.   Defense counsel filed a pretrial motion to suppress the identification testimony of Deborah Oakley.   The trial court did not view a photograph of the actual lineup because the data card on which those digital photographs were stored had been corrupted.   The trial court, instead, viewed individual photographs of the lineup participants.   The police officer who authenticated the photographs did not know when the photographs were taken.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood

9

of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).

A court must undertake a two-step analysis to determine the validity of a pretrial

identification.   First, the court must determine whether the procedure was unduly

suggestive.  If the court finds that the procedure was unduly suggestive, the court must

then "evaluate the totality of the circumstances to determine whether the identification was

nevertheless reliable."  *Id.*  The petitioner bears the burden of showing impermissible

suggestiveness.  *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

A photographic array is impermissibly suggestive if "the picture of the accused,

matching descriptions given by the witness, so stands out from all of the other photographs

as to suggest to an identifying witness that that person was more likely to be the culprit."

*United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994); *see also Schawitsch v. Burt*, 491

F.3d 798, 803 (8th Cir. 2007) ("Reasonable variations in hair length and facial hair are not

impermissibly suggestive, especially as they can vary on any given person at different

times."); *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) ("It is not required that all of the

photographs in the array be uniform with respect to a given characteristic.").

The Michigan Court of Appeals reviewed the photo array and found it was not unduly

suggestive:

> The trial court found from photographs of the lineup participants that
> everyone was substantially similar in appearance and that defendant did not
> stand out to the extent that the lineup was unduly suggestive.  Defendant
> does not contend that this finding is clearly erroneous, but rather asserts that
> had the court been able to see the other participants to gauge their relative
> weight, height, and complexion, it might have reached a different conclusion.
> While the victim's trial testimony indicated that there were some variations
> among the participants, such variations do not compel a finding that the
> lineup was unduly suggestive.
>
> "[A] suggestive lineup is not necessarily a constitutionally defective one.

10

Rather, a suggestive lineup is improper only if under the totality of the circumstances there is a substantial likelihood of misidentification." [*People v.] Kurylczyk,* 443 Mich. 289, 306 (1993). The fact that there are physical differences between the defendant and other subjects in the lineup does not generally in and of itself render the lineup impermissibly suggestive. *Id.* at 312. "Physical characteristics among the lineup participants . . . are significant only to the extent that they are apparent to the witnesses and substantially distinguish the defendant from the other lineup participants." *People v. Hornsby*, 251 Mich. App. 462, 466; 650 N.W.2d 700 (2002). Defendant has not identified any characteristics that substantially distinguished him from the other participants such that the lineup was rendered unduly suggestive.

*Hatchett*, slip op. at 3.

In habeas proceedings, a state court's factual findings are entitled to a presumption of correctness which the petitioner bears the burden of overcoming by "clear and convincing" evidence. See 28 U.S.C. § 2254(e)(1). Hatchett has provided no evidence sufficient to overcome the presumption of correctness afforded the state court's factual findings regarding the similarity of the participants in the array. The state court's analysis rejecting Hatchett's challenge to the suggestiveness of the lineup was not erroneous nor was it an unreasonable application of clearly established Supreme Court precedent.

### V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district

11

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## VI.  CONCLUSION

**WHEREFORE** it is hereby **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's "Motion Seeking Substantive Relief for Imputed Default" (docket no. 11) is **DENIED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge


Dated: February 17, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 17, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager